UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 7:09-124-KKC

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,                                                            PLAINTIFF

v.                              **OPINION AND ORDER**

BREEDING HEAVY HAULERS, INC.,          DEFENDANT/THIRD-PARTY PLAINTIFF

v.

GREAT AMERICAN INSURANCE CO. OF NEW YORK
and
PROCESS SYSTEMS, INC.                                        THIRD-PARTY DEFENDANTS

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

This matter is before the Court on the Motion for Judgment on the Pleadings [DE 46] filed by Third-Party Defendant, Great American Insurance Company of New York. Because the claim against Great American filed by Third-Party Plaintiff Breeding Heavy Haulers, Inc. ("Breeding") was filed after the two-year limitations period contained in the contract between the parties, Great American's motion will be GRANTED.

    I.    Facts.

On or about October 13, 2006 Breeding entered into an agreement with a company called Process Systems, Inc. by which Breeding agreed to haul a crane that belonged to Process Systems from Devonia, Tennessee to Process Systems' office in Isom, Kentucky. While being hauled, the crane fell off of Breeding's trailer.

Process System's insurance carrier, Travelers Property Casualty Company of America,

paid Process Systems over $178,000 to cover the damages suffered by Process Systems. It then filed this action against Breeding seeking subrogation for the amount it had paid Process Systems. In its Complaint [DE 1], Travelers asserts that Breeding is liable for the damage to the crane as a motor carrier under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706(a)(1). It also asserts claims for negligence and breach of contract against Breeding.

Breeding then filed a Third Party Complaint [DE 28] against its own insurance company, Great American, and against Process Systems. It appears to assert a negligence claim against Process Systems asserting that Process Systems caused the crane to fall. As to its claim against Great American, Breeding asserts that, at the time of the incident, it reported the incident to Great American and made a demand for representation but that Great American failed to honor the terms of the insurance policy. Breeding asserts breach of contract and statutory bad faith claims against Great American.

Great American has filed a Motion for Judgment on the Pleadings, arguing that Breeding's claims against it are barred by the limitations period contained in the insurance policy.

II. Analysis.

Rule 12(c) provides that, "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P 12 (c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg–Legacy Place*, 539 F.3d 545, 549 (6th Cir.2008) (citation omitted).

2

On a motion for judgment on the pleadings, this Court is not permitted to consider "matters outside of the pleadings." Rule 12(d) provides that, if "matters outside the pleadings are presented to and not excluded by the court," then the motion must be treated as one for summary judgment, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

On this 12(c) motion, Great American asks the Court to consider the insurance policy by which Great American agreed to insure Breeding. The Court may consider this document on a 12(c) motion because it is referred to in Breeding's Amended Third Party Complaint. [DE 28, ¶¶ 15, 17.] *See Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (without converting a motion to dismiss to one for summary judgment, court may consider exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein).

On the other hand, in its response to the 12(c) motion, Breeding submits an affidavit of one of its employees. The Court cannot consider this affidavit on a 12(c) motion without converting the motion to one for summary judgment. The Court will, therefore, exclude the affidavit and will not consider it in resolving this motion.

The insurance policy contains a contractual limitations period providing that "[n]o one may bring a legal action against us under this Coverage Part unless . . . the action is brought within 2 years after you first have knowledge of the direct loss or damage." [DE 46, Att. 2, CM-ECF p. 17].

Considering the language and purpose of the policy, it is clear that "direct loss or damage" refers to direct loss or damage to the crane. Great American agreed to "pay for 'loss' to

3

Covered Property from any of the Covered Causes of Loss." [DE 46, Att. 2, Policy, CM-ECF p. 19]. Loss is defined as "accidental loss or damage." [DE 46, Att. 2, Policy, CM-ECF p. 23]. Covered Property is defined as "property of others that you have accepted for transportation as a motor carrier under your tariff and bill of lading or other written contract." [DE 46, Att. 2, Policy, CM-ECF p. 19]. And Covered Causes of Loss is defined as "your legal liability as a motor carrier, either as imposed by law or assumed by written contract, for Direct Physical 'Loss' to Covered Property. . . ." [DE 46, Att. 2, Policy, CM-ECF p. 20]. Thus, Great American agreed to cover Breeding's legal liability as a motor carrier for direct and accidental loss or damage to the property that Breeding agreed to transport, i.e., the crane.

Thus, when the contractual limitations period provides that any action must be brought within two years after Breeding first has knowledge of the "direct loss or damage," it can only be referring to direct loss or damage to the crane. The entire purpose of the policy is to cover Breeding's legal liability for loss or damage to the crane. There is no other "loss or damage" that is relevant.

In its Complaint, Breeding concedes that, at the time the crane fell off its trailer, it reported the incident to Great American and "made a demand for representation." [DE 28, Third Party Complaint ¶ 16]. Further, as will be discussed, it seems to argue in its response to the 12(c) motion that, while it was aware of the damage to the crane, it was not aware that it caused the damage. [DE 47, Response, CM-ECF p. 4]. Thus, it is clear that Breeding knew of at least some loss or damage to the cargo on the date of the incident. It argues, however, that it did not know of a "direct loss or damage" for purposes of the contractual limitations period until Travelers filed the subrogation action against it. [DE 47, Response at CM-ECF p. 3].

The date that Travelers filed the action against Breeding is irrelevant to the contractual

4

limitations provision. The provision does not refer to the date that Breeding first had knowledge that a third party would seek to hold it liable for the loss or damage to the crane. It refers only to the date that Breeding had knowledge of the loss or damage to the crane.

Breeding appears to argue that it was not aware on the date of the incident that *it* caused any damage to the crane. Instead, it argues, that it believed that an 18-wheeler log truck that turned over on the crane caused the damage or that Process Systems itself caused the damage by insisting that Breeding move the crane. It argues that it was not aware until the action was filed against it that it "might be subjected to a 'direct loss.'" [DE 47, Response, CM-ECF p. 4]. Thus, Breeding seems to interpret "direct loss" as a judgment against it.

If this were an indemnity agreement then, then perhaps the date of the "loss" could be interpreted as the date of a judgment finding Breeding legally liable for the damage to cargo. *See Kroblin Transfer v. Birmingham Fire Ins. Co.*, 30 N.W.2d 325, 327 (Iowa 1948). This policy, however, is not an agreement to indemnify. It does not mention the words "indemnity" or "indemnify." Thus, it is different than the cargo policy at issue in *Kroblin* which explicitly provided "[i]t is the intent of this policy of insurance to be one of indemnity only. . . ." *Id*. at 326.

Instead, the policy at issue here contemplates that claims for loss or damage could be paid without an actual "judgment" entered after litigation. The policy provides that Great American may "adjust losses with the owners of lost or damaged property." [DE 46, Att. 2, Policy, CM-ECF p. 16]. In an insurance policy, "adjust" means "settle." *Waugh v. American Casualty Co.*, 378 P.2d 170, 175 (Kan. 1963). The policy does not provide that Great American will pay only adjudicated claims. *Id. See also Certain Underwriters at Lloyd's of London v. Transcarriers Inc.*, 107 S.W3d 496, 501 (Tenn. Ct. App. 2002).

The policy does cover Breeding's "legal liability as a motor carrier, either as imposed by

5

law or assumed by written contract" for damages to the covered property. [DE 47, Att. 2, Policy, CM-ECF p. 20]. In *Kroblin*, the court determined that, with the indemnification policy at issue in that case which covered the carrier's "legal liability" for "direct loss or damage," the phrase "legal liability" meant a judgment. *Kroblin*, 30 N.W.2d at 327.

However, in a cargo policy such as this that does not provide for indemnification, "legal liability" refers to the specific contractual liability which a carrier assumes on receipt of the cargo from the owner. *Waugh*, 378 P.2d at 730. This common-law liability was codified in 1906 in the Carmack Amendment which establishes a "uniform system of liability for carriers of goods in interstate commerce." *OneBeacon Ins. Co. v. Haas Industries, Inc.*, 634 F.3d 1092, 1096 (9th Cir. 2011).

Under the Carmack Amendment, to establish a *prima facie* case against a carrier, a plaintiff must prove: (1) goods were delivered to the carrier in good condition, (2) the good were damaged before delivered to their final destination; and (3) the amount of damages. *Beta Spawn, Inc. v. FFE Transp. Servs., Inc.*, 250 F.3d 218, 223 (3rd Cir.2001). If the plaintiff establishes a *prima facie* case, the burden shifts to the carrier to show that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability. *Plough v. Mason & Dixon Lines*, 630 F.2d 468, 470 (6th Cir.1980). Upon making a *prima facie* case, the carrier is presumed negligent. *Id*.

Great American's agreement to cover Breeding's "legal liability as a motor carrier" refers to this specific liability of motor carriers under the Carmack Amendment. It does not refer to a judgment against Breeding as the court decided it did in *Kroblin*.

The contractual limitations provision at issue in this case provides that no action can be brought against Great American unless "the action is brought within 2 years after you first have

knowledge of the direct loss or damage." For all the above reasons, loss or damage refers to loss or damage to the cargo. Breeding does not argue that its bad faith claims are not covered under the limitations provision. Nor has it argued that the limitations provision is unreasonable and should not be enforced under Kentucky law.

Breeding concedes that it was aware of at least some damage to the crane in 2006, at the time the crane fell off of Breeding's trailer. Breeding did not file its Third Party Complaint against Great American until 2010. Thus, Breeding's claims against Great American are barred under the policy's limitations provision.

For all these reasons, the Court hereby ORDERS as follows:

1) Great American's Motion for Judgment on the Pleadings [DE 46] is GRANTED;

2) Breeding Heavy Haulers, Inc.'s claims against Great American set forth in its Amended Third-Party Complaint are DISMISSED with prejudice; and

3) Great American's Motion for Summary Judgment [DE 51] and Breeding Heavy Haulers, Inc.'s Motion for Extension of Time [DE 52] are DENIED as moot.

Dated this 26th day of March, 2012.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge